IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT D. TUMPA, SR., | ) | |
| on behalf of himself as an individual and all | ) | Case No.   3:18-cv-112 |
| other similarly situated employees, | ) | |
| | ) | **COMPLAINT-COLLECTIVE** |
| Plaintiff | ) | **AND CLASS ACTION** |
| | ) | |
| vs. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| | ) | |
| IOC-PA, LLC d/b/a LADY LUCK CASINO; | ) | |
| ELDORADO RESORTS, INC.; and MARY ANN | ) | |
| RUTHERFORD, Director of Casino Operations, | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT**

Plaintiff Robert D. Tumpa, Sr., on behalf of himself, a class, and a collective of similarly situated individuals, by and through his attorneys, Feinstein Doyle Payne & Kravec, LLC, brings this Complaint against Defendants and alleges as follows:

## I.     INTRODUCTION

1.     In July 2013, the Lady Luck Casino (the "Casino") opened at Nemacolin Woodlands Resort in Fayette County, Pennsylvania.   The Casino offers a variety of table games, including Blackjack, Poker, Craps, Roulette, Mini-Baccarat, and Mississippi Stud.   Plaintiff and more than 100 similarly situated individuals are, or were, employed as table game dealers and operators at the Casino by Defendants within the last four years.   Under Defendants' longstanding policy, dealers are required to be at work or "punch in" at the Casino seven minutes prior to the start of their shift, for which they are not paid.   Neither are dealers paid for seven minutes or less of time worked after the scheduled ending time of their shift.   Consequently, for many weeks since May 2014, Defendants owe and are liable for unpaid wages, and in

appropriate cases, resulting overtime for at least 35 minutes or more of work time to its table game dealers and operators.

2.      Plaintiff brings this action on behalf of himself and others similarly situated for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Pennsylvania Minimum Wage Act of 1968 ("MWA") as amended, 43 P. S. §333.101 *et. seq.*; Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"), and under the common law doctrine of unjust enrichment, to recover unpaid wages, overtime wages, liquidated damages, pre-judgement interest, and all other appropriate relief.

## II.      PARTIES

3.      Plaintiff Robert D. Tumpa is an adult individual, residing in Somerset County, Pennsylvania.  Plaintiff Tumpa has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  His consent is attached hereto as Exhibit A.

4.      Defendant Mary Ann Rutherford is the Director of Casino Operations at the Casino.  On information and belief, her responsibilities include enforcing the Casino's policy that requires its dealers to be at work for 7 minutes of unpaid time prior to the start of their shift, and disciplining employees who report less than 7 minutes prior to the start of their shift. She reports directly to the general manager of the Casino as well as to personnel at Eldorado Resorts, Inc.

5.      Defendant IOC-PA, LLC ("IOC-PA") is a registered Pennsylvania Corporation which trades and does business as Lady Luck Casino Nemacolin with a principal place of business located at 4067 National Pike, Farmington, PA  15437.  Specifically, IOC-PA operates the Casino at that address.

6.      Defendant Eldorado Resorts, Inc. ("Eldorado") is a Nevada corporation headquartered at 100 West Liberty Street, Suite 1150, Reno, NV 89501.  Eldorado owns and operates hotels and casinos in various states across the country.  According to its website (eldoradoresorts.com), Eldorado "owns and operates twenty properties in ten states, including … Pennsylvania" and lists the Lady Luck Casino at Nemacolin Woodlands Resort as one of the casinos it operates.  Eldorado added the Casino to its portfolio in May 2017 when it merged with and took control of Isle of Capris Casinos, Inc., which owned IOC-PA. Eldorado is considered an "employer" within the meaning of the applicable Pennsylvania and federal wage laws.

### III.      JURISDICTION AND VENUE

7.      Plaintiff's claims, both individually and on behalf of Class members, are brought pursuant to the FLSA, which authorizes lawsuits by private parties to recover damages for violations of its wage and hour provisions, and as such presents a federal question which confers jurisdiction upon this Court pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      Further, Plaintiff and the Class members bring claims pursuant to the MWA and WPCL, and pursuant to an unjust enrichment claim.  This court has jurisdiction over these claims pursuant to 28 U.S.C. §1367.

9.      Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(b) and (c).  Defendants' Lady Luck Casino is located within this District, and a substantial portion of the events or omissions giving rise to Plaintiff's and Class members' claims occurred at the Lady Luck Casino in this District, and affected persons, including Plaintiff, reside or resided in this judicial district at the material time.

### IV.      FACTUAL ALLEGATIONS

10.      The Casino officially opened on July 1, 2013.

11.     Isle of Capri Casinos, LLC, through its wholly owned subsidiary, IOC-PA, operated the Casino from the time the Casino opened until it was acquired by Eldorado in May 2017.

12.      As Eldorado's most recent 10-k filings reflect, it now operates the Casino through IOC-PA.  See Ex. B at p. 25 ("ERI [Eldorado] also operates, through Isle of Capri Casinos, LLC and its wholly owned subsidiary, IOC-PA, LLC ("IOC-PA") a casino facility known as Lady Luck Casino-Nemacolin.")

13.     Eldorado advertises on its website that it operates the Casino.  See Ex. C.

14.     IOC-PA is registered with the Pennsylvania Department of State and does business as "Lady Luck Casino Nemacolin."

15.     Eldorado also owns and operates the Presque Isle Downs & Casino ("Presque Isle Downs") in Erie, Pennsylvania.  It further owns the 272 acres of land on which Presque Isle Downs is located and owns two other parcels of land in that area—a 213-acre site in McKean Township and a 6-acre site in Summit Township that formerly housed an off-track wagering facility.   See Ex. B at p. 21.

16.     IOC-PA operates under a management company license issued by the Pennsylvania Gaming Control Board and is party to a management agreement with Woodlands Fayette, LLC which permits it to manage and operate the Casino.  See Ex. B at p. 25.

17.     Upon information and belief, IOC-PA is the employer of record of the Casino dealers, and is identified on W-2s provided to dealers, including Plaintiff.  Isle of Capris Casinos Inc. was listed on the paystubs until it was acquired by Eldorado, which now appears on the paystubs.

18.     IOC-PA and Eldorado are joint employers for purposes of the FLSA and Pennsylvania law, because: (1) their operations are interrelated; (2) they share common management, including human resources and compliance oversight; and (3) Eldorado, like its predecessor, exercises significant control over the terms and conditions of employment of Casino dealers.

19.     According to the "Employee Handbook" that Isle of Capri Casinos, Inc. distributed to Casino employees, including Plaintiff, the Isle of Capri Casinos, Inc. directly controlled many of the terms and conditions of work.  See Ex.D.

20.      The Casino continues to utilize the same Employee Handbook with Eldorado controlling the same terms and conditions of work as had Isle of Capri Casinos, Inc. prior to the merger.

21.     Upon information and belief, Eldorado is preparing and will distribute an updated Handbook similar to the one Isle of Capris Casinos, Inc. first distributed.

22.     On February 2, 2013, Plaintiff began to train for a position as a dealer at the Casino and subsequently completed and passed dealer school and the requisite tests to be hired as a dealer at the Casino.

23.      Defendants employed Plaintiff as a dealer for table games from June 2013 until June 2016.

24.     Defendants paid Plaintiff and all putative Class members hourly wages as dealers for, or operators of, table games.

25.     Since the Casino opened in 2013, Defendants' policies and practices have been to mandate that all dealers report to the Casino and record their time of entrance ("punch in") seven minutes prior to the "scheduled starting time" of their shift as a condition of their employment.

Defendants hold a "pre-shift" meeting during this uncompensated seven- minute period during which supervisors provide information to employees.

26.     At the scheduled starting time of their shift, Plaintiff Class members go onto the casino floor and begin performing their duties as dealers for, or operators of, table games.

27.      For example, if an employee's scheduled starting time is 8:00, Defendants require him or her to punch in at 7:53 and begin work at a table at 8:00 but only compensate him or her for hours worked after 8:00.

28.     The work performed by Class members in the seven-minute period before the scheduled start of their shift is integral and indispensable to the work for which they were hired, is for Defendants' benefit, and is required by Defendants as a condition of Plaintiff's and Class member's employment.

29.     Despite requiring Plaintiff and Class members to punch in (and begin working) seven minutes before the start of their shift, Defendants never compensated them for this seven-minute period.

30.     It is also believed, and therefore averred, that Defendants did not compensate Plaintiff and Class members when they worked seven minutes or less after the scheduled ending time of their shift.  For example, if Defendants scheduled Plaintiff or a class member to work until 4:00, and in fact she worked until 4:06, they did not pay the employee for this six-minute period.

31.      Federal law permits employers to round employees' hours up or down to the nearest quarter hour, provided that "this arrangement averages out so that the employees are fully compensated for all the time they actually work." Therefore, rounding must be conducted in "a manner that will not result, over a period of time, in failure to compensate the employees

properly for all the time they have actually worked." 29 C.F.R. §785.48(b).  *See also* DOL

Opinion letter, dated November 7, 1994, found at 1994 WL 1004879 (confirming that rounding

is permitted, but  "insubstantial and insignificant" periods of time can be disregarded only when

"a few minutes are involved and where the failure to count such time as hours worked is due to

conditions justified by industrial realities," and noting, "however, that where an employer

arbitrarily fails to pay an employee for any part of the employee's fixed or regular working time,

however small, this would be considered a violation of the FLSA.")

32.     Defendants' "rounding" policy intentionally deprived Plaintiff and continues to

deprive class members of compensation for time worked, as it works only one way. Each and

every day it deprived Plaintiff and Class members of wages for at least seven minutes of time at

the outset of every shift, and at times deprived them of wages for up to seven minutes at the end

of the shift.

33.     Given that Defendants' attendance and rounding policy caused Plaintiff and class

members to work at least 7 minutes without pay each and every day they worked, the only way

Defendants' policy could result in their receiving anything approaching payment for all of their

time worked, would be if Defendants permitted them to clock out seven minutes prior to the end

of their shifts every single day and paid them for those minutes.

34.     Thus, even if Defendants occasionally permitted employees to clock out a few

minutes early, this could never make up for the compensation that they were deprived of at the

start of every day.  *See Canelas v. World Pizza, Inc.*, 2017 WL 1233998, *10-11, fn 18

(S.D.N.Y. 2017) (rounding policy that the company claimed was neutral violated the FLSA

because the policy consistently failed to compensate the employees for time worked each day,

meaning that it could never "average out.")

35.     Moreover, Defendants' practice, enforced by Defendant Rutherford, was to discipline employees who punched in later than seven minutes prior to their scheduled starting time, by assigning them "points," which, if accumulated, could lead to termination.

36.     Furthermore, the "Lateness" section of Defendants' Attendance Policy (attached as Exhibit E) provides "A Team Member who is not at their workstation on time and ready to work when scheduled is considered to be late. **Time clock rounding has no bearing on whether or not a Team Member is late**." (emphasis added).  Such a policy, in which rounding only benefits an employer, is impermissible. *See Schneider v. Union Hosp., Inc.,* 2016 WL 6037085, at *3, 10-11 (S.D. Ind. 2016) (In a case in which the employee handbook contained a similar provision indicating that an employee who was a minute late was considered late, the court ultimately concluded that the company's policy always benefitted the employer and never benefitted the employees.)

37.     Defendants' actions deprived and continue to deprive Class members of wages for time they worked on behalf of Defendants.  They are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other relief.

38.     As these seven-minute unpaid intervals occur every working day, they are regular and easily quantifiable. When aggregated over the course of a year's time, they are substantial and significant.  The seven minutes per day of uncompensated time for Plaintiff Tumpa, for example, totals approximately 28 hours per year. (48 weeks per year x 5 shifts per week x 7 minutes per shift/60 minutes per hour)

39.     Defendants' practice at the end of the shift similarly undercounts the time that Plaintiff and Class members have worked.

40.     When Plaintiff and Class members "punch out" after the official end time of their shift, Defendants, in theory, round up or down to the next quarter hour.  For example, if a dealer punches out seven or fewer minutes after her shift has ended, Defendants round down to the official end time of the shift, and those minutes are unpaid.  As Defendants warn Class members that they will be disciplined if they punch out more than seven minutes after the end of their shifts, Defendants rarely, if ever, round up to the next quarter of an hour. The result is that Class members are not paid for up to 7 minutes per work day at the end of their shifts in addition to the 7 minutes per work day they are not compensated for at the beginning of their shifts.

41.     Further, where Plaintiff and class members worked in excess of 40 hours per week, Defendants are required to compensate them at the rate of time and one half for all time in excess of 40 hours per week pursuant to the FLSA, MWA, and WPCL.  Contrary to this obligation, Defendants have not compensated Plaintiff nor the Class members for any of the time at issue here, either at regular hourly rates or at time and one half.

42.     Defendants knew, or should have known, that their rounding policy deprived Plaintiff and the Class compensation for all of the time they worked and that their policy violated the FMLA, MWA, and the WPCL.

43.      Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and the Class members.

## V.  COLLECTIVE ACTION ALLEGATIONS

44.     Plaintiff brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of table game dealers and operators who were employed by Defendants at the Casino any time within three years of the filing of this Complaint through final

disposition of this case and who did not receive compensation for time and/or overtime that they expended for Defendants' benefit on account of Defendants' rounding policy and practice.

45.     At all relevant times, Plaintiff and all current and former table game dealers and operators of Defendants are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices and procedures of willfully failing and refusing to pay for the time they required Plaintiff and other employees to work.

46.     Plaintiff, individually and on behalf of other similarly situated workers, seeks relief on a collective basis and challenges Defendants' practices concerning rounding of hours, which, as set forth above, operates in a manner which fails to pay for time Plaintiff and the class members worked to the benefit of Defendants.

47.     The number and identity of other persons yet to opt-in and consent to be party plaintiffs may be determined from records under the control of Defendants, and potential class members may easily and quickly be notified of the pendency of this action by electronic and regular mail.

48.     Plaintiff intends to undertake appropriate action pursuant to 29 U.S.C. § 216(b) to seek to have similarly situated individuals notified of the pendency of this action so they may join this action as plaintiffs by filing written consents to joinder with the Court.

### VI.     CLASS ACTION ALLEGATIONS

49.     Plaintiff brings Counts II-IV, violations of the MWA, WPCL, and unjust enrichment, as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class of litigants:

> All individuals who were employed as non-exempt table game dealers and operators at the Lady Luck Casino at any time within the four-year period prior to the filing date of

10

this Complaint for Unjust Enrichment claims, and within the three-year period prior to the filing date for MWA and WPCL claims.

36.     Plaintiff is unable to state the exact number of Class members without discovery

of Defendants' books and records, but, on information and belief, estimates that there are and/or

were in excess of one hundred table game dealers and operators at the Casino who were not

properly compensated for work performed.  Therefore, the number of Class members is so

numerous that individual joinder of the Class members would be impractical.

50.     Common questions of law or fact exist as to all Class members and predominate

over questions affecting only individual members of the Class, and a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy.

51.     Common legal or factual questions affecting the Class include:

   a.  Whether Defendants' rounding practices combined with their requirement
       that Plaintiff and Class Members arrive at the job site and punch in seven
       minutes before they are compensated for their time, results in their not
       being compensated for all of their working time.

   b.  Whether Defendants' rounding practices combined with their requirement
       that Plaintiff and Class Members arrive at the job site and punch in seven
       minutes before they are compensated for their time violates the MWA,
       WPCL or constitutes unjust enrichment.

   c.  Whether Plaintiff and Class members worked in excess of 40 hours when
       the first seven minutes of their shift are added to the hours they are
       credited with under Defendants' rounding practices.

   d.  Whether Defendants paid Plaintiff and Class members overtime owing for
       hours worked in excess of 40 per week when the first seven minutes of
       their shift are added to the hours they are credited with under Defendants'
       rounding practices.

   e.  Whether Defendants' failure to pay Plaintiff and Class members wages for
       work performed before and after scheduled shifts was willful and entitles
       them to recover liquidated damages under the WPCL and MWA;

52.     There are questions of law and fact common to the Class members, as Plaintiff and the Class members are similarly situated, as that term is defined in 29 U.S.C. §216(b), because, *inter alia*, the Class members had similar job requirements and all Class members were required by Defendants to work at least seven minute periods of time each workday for which they were not compensated, meaning that they were not compensated for all work performed during the workday and, with respect to such work, were not paid the legally mandated overtime premium.

53.     Plaintiff's claims are typical of the claims of the other Class members because, like the Class members, Plaintiff was a table game dealer at the Casino who was required to work seven-minute periods each workday without compensation.  Therefore, Plaintiff is no different in any material respect from any other Class member, and the relief sought by Plaintiff is common to the relief sought by the Class members.

54.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff and his counsel will fairly and adequately protect the interests of the Class members.

55.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member are relatively small, while the burden and monetary expense needed to individually prosecute this case against Defendants is substantial.  Thus, it would be difficult for Class members individually to redress effectively the wrongs done to them. Moreover, even if members of the Class could afford individual actions, a multitude of such individual actions still would not be preferable to class wide litigation. Individual actions also present the potential for inconsistent or

contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.

56.     By contrast, a class action presents far fewer litigation management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## <u>COUNT I</u>

### **(Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*)**

57.     Plaintiff incorporates all allegations in the preceding paragraphs.

58.     At all times relevant to this matter, IOC-PA, Eldorado, and Mary Ann Rutherford were "employers" within the meaning of 29 U.S.C. § 203(d) and Plaintiff and Class members are or were employees pursuant to 29 U.S.C. § 203(e).

59.     The FLSA requires that covered employees be compensated for every hour worked in a workweek.  29 U.S.C. §206(b).

60.     The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  29 U.S.C. §207(a).

61.     The overtime wage provisions set forth in the FLSA apply to Defendants and the positions held by Plaintiff and Class members are not exempt from the FLSA's overtime compensation requirements.

62.     Defendants have engaged in a willful practice of violating the FLSA by requiring Plaintiff and Class members to work prior to the scheduled starting time of their shift and/or after

the scheduled ending time of their shift, without compensation and without paying them for properly calculated regular rate wages, overtime rate compensation, and/or other required compensation.

63.      Federal law permits employers to round up or down to the nearest quarter hour, but presumes that "this arrangement averages out so that the employees are fully compensated for all the time they actually work," and therefore rounding must be conducted in "a manner that will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. §785.48(b).

64.      As described *supra*, Defendants' rounding policy is not neutral, and, as designed, illegally denies compensation to its employees.  Defendants require their employees to begin working seven minutes before their scheduled starting time (without compensation), but informs them (via their handbook) that arriving even a minute after their scheduled start time would be considering arriving late (depriving late arrivals of any rounding benefit).  Defendants' rounding of their employees' hours is not due to random variances in time, as contemplated in applicable federal guidance, but rather through a specific scheme set up by Defendants to require uncompensated work every day.

65.      The inevitable result of Defendants' rounding policy is the systematic illegal failure to compensate employees.  Even if some employees benefitted from the occasional "rounding up" of time (on days they left a few minutes early), this could never fully make up for their time being "rounded down" every day by requiring them to arrive seven minutes early.

66.      As a result of Defendants' willful actions, Plaintiff and Class members have been illegally deprived of wages and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

67. Defendants' conduct in failing and refusing to properly compensate Class members for work performed before their scheduled starting time of their shifts is willful and not based on any reasonable interpretation of the law.

68. As a result of Defendants' willful acts and violation of the FLSA, Class members have been deprived of overtime compensation and other wages and compensation in amounts to be determined, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

69. Records pertinent to calculating the number of excess hours worked by members of the Class and the compensation they are entitled to receive are in the possession and control of Defendants and their agents.  Plaintiff, therefore, is unable to state, until discovery is obtained, the exact amounts owed to Class members.

<u>**COUNT II**</u>

**(Violation of Pennsylvania Minimum Wage Act, 43 P. S. §333.101 *et. Seq*)**

70. Plaintiff incorporates the allegations in the preceding paragraphs.

71. At all times relevant to this matter, Defendants IOC-PA and Eldorado were "employers" within the meaning of 43 P.S. §333.103.

72. Plaintiff and those similarly situated are and/or were employees of Defendants within the meaning of the MWA, *see* 43 P.S. §333.103, and, as such, were entitled to the benefits of the MWA, including its wage and overtime requirements.

73. The MWA exempts certain employees from overtime obligations. See 43 P.S. § 333.105.  None of these exemptions applies here.

74. The MWA requires that covered employees be compensated for every hour worked in a workweek.  43 P.S. §333.103.

75.     The MWA provides that "Employees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary." 43 P. S. §333.104(c).

76.     The overtime wage provisions set forth in the MWA apply to Defendants and the positions held by Plaintiff and Class members are not exempt from the MWA's overtime compensation requirements.

77.     Defendants violated the MWA by requiring members of the Class to work prior to the scheduled starting time of their shift and/or after the scheduled ending time of their shift without compensation and without paying them for properly calculated regular rate wages, overtime rate compensation, and/or other required compensation.

78.      Defendants' conduct in failing and refusing to properly compensate members of the Class for work performed before their scheduled starting time of their shifts is willful and not based on any reasonable interpretation of the law.

79.     As a result of Defendants' willful acts and violation the MWA, members of the Class have been deprived of overtime compensation and other wages and compensation in amounts to be determined, and are entitled to recovery of such amounts, attorneys' fees, costs, and any other amounts determined by this Court.

80.     Records pertinent to calculating the number of excess hours worked by members of the Class and the compensation they are entitled to receive are in the possession and control of Defendants and their agents.  Plaintiff, therefore, is unable to state, until discovery is obtained, the exact amounts owed to members of the Class.

## COUNT III

**(Violation of Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*)**

81.     Plaintiff incorporates the allegations in the preceding paragraphs.

82.     At all times relevant to this matter, Defendants IOC-PA, Eldorado, and Mary Ann Rutherford were "employers" within the meaning of 43 P.S. §260.2a.

83.     The WPCL requires employers to "pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer." It further requires that wages "earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, within the standard time lapse customary in the trade or within 15 days from the end of such pay period." 43 P.S. § 260.3(a).

84.     As described *supra*, Defendants violated the WPCL by failing to pay Plaintiff and the class members amounts owed for time worked before the scheduled starting time and/or after the scheduled ending time of their shift, within the time period required by the WPCL, and such wages have not been paid within 30 days of their regularly scheduled paydays.

85.     Therefore, pursuant to 43 P.S. §§260.9a and 260.10, in addition to wages owed, Plaintiff and the Class members are also entitled to recover liquidated damages (equal to the greater of 25% of wages due or $500) and costs for reasonable attorneys' fees from Defendants.

86.     Defendants' conduct in failing and refusing to properly compensate members of the Class for work performed is willful and not based on any reasonable interpretation of the law.

87.     As a result of Defendants' willful acts and violation the WPCL, Plaintiff and members of the Class have been deprived of overtime compensation and other wages and compensation in amounts to be determined, and are entitled to recovery of such amounts, attorneys' fees, costs, and any other amounts determined by this Court.

88. Records pertinent to calculating the number of excess hours worked by Plaintiff and Class members and the compensation they are entitled to receive are in the possession and control of Defendants and their agents. Plaintiff, therefore, is unable to state, until discovery is obtained, the exact amounts owed to Plaintiff and members of the Class.

## COUNT IV

### (Restitution Based on Unjust Enrichment)

89. Plaintiff incorporates the allegations in the preceding paragraphs.

90. In Pennsylvania, an employee may recover amounts for unpaid time worked under an unjust enrichment theory. *See Braun v. Wal-Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa. Super. 2011) (If "one party has been unjustly enriched at the expense of another, he is required to make restitution to the other. In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied.") (*quoting Meehan v. Cheltenham Twp.*, 189 A.2d 593, 595 (Pa. 1963)).

91. As established *supra*, (1) Defendants benefitted from the unpaid work of Plaintiff and the other Class members and (2) it would be unjust for Defendants to keep the wages related to this work.

92. Thus, Plaintiff and the Class members are entitled to restitution of the unpaid wages and overtime which are due and owing to them, along with any other relief deemed fair and equitable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class members, prays for the following relief:

    A. That, at the earliest possible time, the Court, with regard to Count I, preliminarily certify this action to be a proper collective action pursuant to 29 U.S.C. § 216 and

permit Plaintiff to notify all affected persons that an action asserting FLSA claims has been filed, of the nature of the action, and of their right to join the suit if they believe they were denied wages;

B.   On Count I:

   (i)     Declare that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff and similarly situated persons who opt into this action; that Defendants failed to pay amounts owed to Plaintiff and similarly situated persons for time worked; that Defendants' violations were willful; that a three year statute of limitations applies; that Defendants failed to keep accurate records of time worked; that Plaintiff and other similarly situated persons are entitled to be paid overtime for work in excess of 40 hours per week; that the amount of unpaid overtime to which Plaintiff and others similarly situated are entitled is to be doubled as liquidated damages and awarded to them;

   (ii)    Award Plaintiff and other similarly situated persons who opt into this action damages in the amount of unpaid wages, overtime compensation, and any other amounts owed, to be proven at trial;

   (iii)   Award Plaintiff and other similarly-situated persons who opt into this action liquidated damages in an amount equal to the overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b), or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

   (iv)    Award reasonable attorneys' fees and costs;

C.   On Count II:

   (i)     Declare that Defendants violated the MWA;

   (ii)    Award damages to Plaintiff and Class members in the amount of unpaid wages, overtime, and any other amounts owed, according to proof at trial;

   (iii)   Award Plaintiff and Class members pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

   (iv)    Award reasonable attorneys' fees and costs;

D.   On Count III:

   (i)     Declare that Defendants violated the WPCL by failing to pay regular wages and overtime for work to Plaintiff and Class members; that Defendants acted without good faith or reasonable grounds; and that Plaintiff and Class members are entitled to liquidated damages;

(ii)     Award damages to Plaintiff and Class members in the amount of unpaid regular wages, overtime, and any other amounts due;

(iii)    Award liquidated damages to Plaintiff and the Class in an amount equal to 25% of unpaid regular and overtime wages or $500, whichever is greater;

(iv)    Award reasonable attorneys' fees and costs;

E.  On Count IV:

(i)     Award Plaintiff and Class members restitution in the amount of their unpaid regular and overtime wages, and any other amounts due, including interest thereon;

F.  Attorneys' fees and costs of the action;

G.  Pre- and post-judgment interest; and

H.  Grant Plaintiff and all Class members a permanent injunction enjoining Defendants, its officers, agents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates the FLSA, MWA, and/or WPCL; and

I.   That the Court enter such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

Dated:  May 23, 2018

/s/ Edward J. Feinstein
Edward J. Feinstein (PA No. 29718 )
efeinstein@fdpklaw.com
Elizabeth Rabenold (PA No. 58039)
erabenold@fdpklaw.com
Brendan R. Delaney (PA No. 92035)
bdelaney@fdpklaw.com

**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA 15219-1639
Tel.: (412) 281-8400
Fax: (412) 281-1007

***ATTORNEYS FOR PLAINTIFF ROBERT***
***D. TUMPA AND THE PROPOSED CLASS***