## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT D. TUMPA, SR. and DANA     )
KELLEY, individually and on behalf of others  )
similarly situated,                         )
                                        )
           Plaintiffs,                )
                                      )    Civil Action No. 3:18-cv-112
     vs.                           )    Judge Stephanie L. Haines
                                      )
IOC-PA, LLC d/b/a LADY LUCK CASINO;  )
ISLE OF CAPRIS CASINOS LLC f/k/a ISLE  )
OF CAPRIS CASINOS, INC.; ELDORADO   )
RESORTS, INC.; and MARY ANN         )
RUTHERFORD, Director of Casino       )
Operations,                            )
                                      )
           Defendants.           )

## OPINION

      This is a class action and collective action lawsuit wherein Plaintiffs allege Defendants

violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*.; the Pennsylvania

Minimum Wage Act of 1968 ("MWA") as amended, 43 P.S. § 333.101 et seq.; the Pennsylvania

Wage Payment and Collection Law, 43 P.S. § 260.1 et seq. ("WPCL"); and, the common law

doctrine of unjust enrichment.  Plaintiffs allege in their Amended Complaint (ECF No. 15) that

Defendants deliberately deprived employees of compensation for time worked by "rounding" their

clock-in and clock-out times to the nearest quarter hour and requiring employees to clock-in seven

minutes before the start of their scheduled shifts ("rounding policy").  Defendants denied

Plaintiffs' claims, asserting that the rounding policy was lawful and various other affirmative

defenses (ECF Nos. 21-24).

      Pending before the Court are Plaintiffs' unopposed motions for final approval of the

collective and class action settlement agreement (ECF No. 54) and for approval of Plaintiffs'

counsel's requested award of attorneys' fees and costs (ECF No. 51). The Court held a final fairness hearing on August 20, 2020, during which no third-party objected to or otherwise sought to intervene in the settlement (ECF Nos. 59, 60). After careful consideration, the Court will grant both of Plaintiffs' motions and approve the settlement.

## I.  Background

### A.  Plaintiffs' Claims

On May 24, 2018, Plaintiff Robert D. Tumpa, a former table game dealer at the Lady Luck Casino in Nemacolin, Pennsylvania, filed the instant lawsuit, and Plaintiff Dana Kelley, was added in an Amended Complaint filed on September 24, 2018 (ECF No. 15). Plaintiffs allege that the casino's owners and operators, Defendants IOC-PA, LLC d/b/a Lady Luck Casino, Isle of Capris Casinos LLC f/k/a Isle of Capris Casinos, Inc., Eldorado Resorts, Inc., and Mary Ann Rutherford, deliberately deprived employees of compensation for time worked by their rounding policy of "rounding" their clock-in and clock-out times to the nearest quarter hour and requiring employees to clock-in seven minutes before the start of their scheduled shifts. As stated in the Amended Complaint:

> For example, if an employee's scheduled start time was 8:00, he was required to clock-in at 7:53, but his start time was "rounded up" and he was compensated only for time worked on and after 8:00 (whereas if he had clocked-in at 7:52, his start time would have been "rounded down" to 7:45).

ECF No. 15 at ¶ 32.

Plaintiffs filed their suit on behalf of themselves and other similarly situated employees as a collective action under the FLSA (ECF No. 15 at ¶¶ 49-53; 63-71). Plaintiffs also brought Fed. R. Civ. P. 23 class action claims under the Pennsylvania's MWA, WPCL, and common law doctrine of unjust enrichment (ECF No. 15 at ¶¶ 54-62; 76-98).

Under the FLSA, employees may be able to recoup "their unpaid minimum wages… and an additional amount as liquidated damages." 29 U.S.C. § 216(b). As in the FLSA, the WPCL also contains a liquidated damages provision: "[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday . . . the employee shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 43 P.S. § 260.10. Therefore, if Plaintiffs prevail, class members would be entitled to damages under these statutes, as well as reasonable attorney fees.

In their Answers to the Amended Complaint (ECF Nos. 21-24), Defendants generally denied the averments in the Amended Complaint. They asserted that the employees' time was rounded both up and down to the nearest quarter hour and that the rounding policy was lawful, in addition to various other affirmative defenses.

### B. Discovery

On October 30, 2018, the parties exchanged Fed. R. Civ. P. 26(a)(1) disclosures. On January 8, 2019, Defendants produced to Plaintiffs an excel spreadsheet, which listed: (i) each shift worked by a dealer from May 23, 2015 (or three years prior to the filing of the lawsuit) to December 31, 2018, for a total of 42,264 shifts; (ii) the actual clock-in and clock-out times for each shift worked; (iii) the rounded clock-in and clock-out times for those dealers for each shift; and (iv) the dealers' minimum hourly wage for each shift, which reflected an average hourly rate per shift worked of $6.13 (ECF No. 45-1 at ¶ 5). The parties appear to agree that the information showed that from May 23, 2015 to December 31, 2018, a total of $19,321.23 in hourly wages relating to 147 individuals remained unpaid when (i) the "rounded" clock-in and clock-out time for each shift worked multiplied by each dealer's individual hourly pay for that shift was subtracted

3

from (ii) the actual clock-in and clock-out times for each shift worked multiplied by each dealer's individual hourly pay for that shift (ECF No. 51-1 at ¶ 4). When only unpaid wages were counted (i.e. when the calculation did not include a "set off" for time that was paid for by Defendants but not actually worked), the lost wages totaled $20,710.47 (ECF No. 51-1 at ¶ 4).

### C. Settlement Negotiations and Mediation

On January 17, 2019, the parties engaged in an in-person full day mediation in Pittsburgh with mediator Sally Cimini, where they reached an agreement to resolve the case (ECF No. 45-1 at ¶ 6). Additionally, Defendants indicate that the requirement for table games dealers to clock in seven minutes before the start of their scheduled shift had ended sometime in 2018, after this suit was filed (ECF No. 45-1 at ¶ 7).

### D. Settlement Agreement

The Settlement Agreement ("Agreement") reached by the parties consists of the following material terms:

### 1. Certification of a Settlement Class Under Fed. R. Civ. P. 23(b)(3)

The Agreement provides the following Settlement Class with the opportunity to receive payment under the terms of the settlement:

> **"Settlement Class"** or **"Settlement Class Members"** means all individuals employed as non-exempt table game dealers and operators at the Lady Luck Casino at any time from May 24, 2015 through December 31, 2018, as to whom: (i) the Casino's time records show that their actual hours clocked-in to work exceeded the rounded clocked-in hours for which they were paid, and (ii) had they been paid for their actual hours clocked-in instead of their rounded hours clocked-in, they would have received $5.00 or more over what they were actually paid.

ECF No. 49-1 at p. 5.

On March 31, 2020, the Court granted preliminary approval of the collective class action settlement agreement and class notice (ECF No. 50). The order also approved that Settlement

4

Services, Inc. would be appointed as the settlement administrator (ECF No. 50). As the administrator, Settlement Services performed an analysis of the spreadsheet and identified that 139 individuals met the class definition of Settlement Class Members (ECF No. 51-1 at ¶ 5).

### 2. Payments from a Gross Settlement Fund of $69,000.00

Under the settlement, Defendants agreed to make a payment of $69,000.00 to resolve this case (ECF No. 49-1 at p. 4). That money will be allocated as follows:

#### a. Incentive Awards to Plaintiffs Subject to Court Approval

Defendants will pay $2,000.00 each to Mr. Tumpa and Ms. Kelley as an incentive award (ECF No. 49-1 at ¶ 2.A).

#### b. Attorneys' Fees and Expenses

Plaintiffs will seek (and Defendants will not oppose) Court approval of attorneys' fees and costs in the amount of $25,133.08, or 36.4% of the $69,000.00 Gross Settlement Fund, but the Settlement is not contingent upon the Court's approval of this amount (ECF No. 49-1 at ¶ 2.B).

#### c. Payments to Participating Settlement Class Members

After incentive awards and attorneys' fees and costs are paid, the "Net Settlement Fund" (calculated to be $39,866.92) will be allocated to Settlement Class Members who do not opt-out of the class (defined as the "Participating Settlement Class Members") (ECF No. 55 at p. 5). As summarized by Plaintiffs, the Agreement specifically provides:

> "….a Participating Settlement Class Member's individual share of the Net Settlement Fund vis-a-vis the rest of the Participating Settlement Class will equal the value of his or her unpaid wages divided by the total value of the unpaid wages of the Participating Settlement Class as a whole."

ECF No. 55 at pp. 5-6.

### 3. Notice and Administration Costs

In addition to the Gross Settlement Fund payment of $69,000.00, Defendants agreed to

pay the costs associated with the settlement administrator's, Settlement Services Inc.'s, handling of the settlement claims process, including the identification of Settlement Class Members and the calculation of the payments due to those individuals, notice to the Settlement Class, and individual payments to Participating Settlement Class Members (ECF No. 49-1 at p. 4).

### 4. Release of Claims

The parties agreed that participating Settlement Class Members will release all claims against Defendants "…for unpaid wages, underpayment of wages, unpaid overtime, underpayment of overtime, unpaid meal or rest premiums, unpaid bonuses or underpayment of bonuses on account of not having paid overtime allegedly due, claims for additional bonus eligibility or amounts due to the wages paid with this Settlement," arising under the MWA, WPCL or other law, "arising from May 24, 2015 up to and including the date [the] Agreement was executed [January 29, 2020] and either asserted in or reasonably related to the Action" (ECF No. 49-1 at p. 7).

The parties agreed that the checks issued to Participating Settlement Class Members will bear a legend describing the Release and informing them that by timely cashing their checks, they will be deemed to have opted-in to become a party plaintiff in the lawsuit (ECF No. 49-1 at p. 8). Participating Settlement Class Members release FLSA claims by not opting-out and by cashing the check for their share of the settlement, and the Participating Settlement Class Members released the other wage claims by not opting-out (ECF No. 49-1 at p. 8).

### E. Preliminary Approval and Class Notice

As previously stated, on March 31, 2020, the Court entered an order that conditionally certified Plaintiffs' proposed settlement class, granted preliminary approval of the settlement, and approved the proposed notice to class members (ECF No. 50). Plaintiffs represent that Settlement Services, Inc. mailed the approved notice of settlement to the identified 139 Settlement Class

Members by first-class mail, after utilizing the Notice of Change of Address database maintained by the U.S. Postal Service to ensure that addresses were up to date (ECF No. 55-1 at ¶¶ 3-5). Twelve notices were returned as undeliverable without forwarding information (ECF No. 55-1 at ¶ 6). Settlement Services, Inc. conducted a locator trace and re-mailed notices to eleven of those individuals, and the one notice that could not be traced was re-mailed at the request of Plaintiffs' counsel to a new address (ECF No. 55-1 at ¶ 6). Of those re-mailed notices, three were undeliverable and it is believed they did not receive notice (ECF No. 55-1 at ¶ 6).

The deadline for opt-outs and objections was a postmark deadline of June 23, 2020 (ECF No. 55-1 at ¶¶ 9-10). In total, there have been only three opt-outs (all of which were timely), and no objections (timely or otherwise) (ECF No. 55-1 at ¶¶ 9-10).

### F. Motions for Final Approval and Fairness Hearing

On July 2, 2020, Plaintiffs filed an Unopposed Motion for Attorneys' Fees and Expenses (ECF No. 51). On August 10, 2020, Plaintiffs filed an Unopposed Motion for Final Approval of Collective and Class Action Agreement (ECF No. 54). As part of these motions, Plaintiffs filed briefs in support of these motions which appended declarations regarding the completion of class notice (ECF No. 55-1, ECF No. 51-1). On August 20, 2020, the Court held a final fairness hearing (ECF Nos. 59-60). No class member, nor any other individual, objected to the settlement before, during, or after the fairness hearing.

### II. Legal Analysis

In reviewing the proposed settlement of Plaintiffs' collective and class action claims, the Court must apply the standards set forth in Fed. Rule of Civ. P. 23, as well as determine whether the settlement is "fair and reasonable" under the FLSA. In this case, the Court has carefully considered the entire record, including the parties' briefing, declarations submitted in support of

Plaintiffs' motions, and the proceedings at the final fairness hearing.  As set forth below, the Court will certify the proposed settlement classes, approve the Agreement, and award Plaintiffs' counsel their requested fees.

### A. The Agreement is a Fair and Reasonable Settlement of a Bona Fide FLSA Dispute.

"When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal citations omitted).  The FLSA's provisions "are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act." *Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory[.]")

First, the Court must determine whether the proposed settlement would resolve a "bona fide" dispute under the FLSA.  In this context, "[a] dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (internal citations omitted).  "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.*

In this case, Plaintiffs claim that Defendants' rounding policy intentionally deprived Plaintiffs and class members of compensation for time worked in violation of the FLSA (ECF No.

15 at ¶37).  Plaintiffs' claim at Count I clearly falls within the contours of the FLSA.  The record also contains clear "evidence of the defendant's intent to reject or actual rejection" of Plaintiffs' claims.  *Kraus*, 155 F. Supp. 3d at 530.  Defendants have filed answers denying many of Plaintiffs' key factual allegations (ECF Nos. 21-24).  Defendants have also asserted and maintained multiple affirmative defenses to Plaintiffs' claims and entitlement to recovery of damages (ECF Nos. 21-24).  The record establishes that resolution of the legal issues in this case would turn on the disputed facts involving, at a minimum, Plaintiffs' employment, Defendants' pay practices, and Defendants' good or bad faith in establishing the challenged rounding policy.  The Court therefore finds that the proposed settlement resolves a "bona fide" dispute of "factual issues rather than legal issues."  *Kraus*, 155 F. Supp. 3d at 530.

"[I]f the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).  In analyzing proposed FLSA settlements, "district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." *Brown v. TrueBlue, Inc.*, No. 1:10-CV-00514, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013).  But, "unlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not negotiating around the clear FLSA requirements via settlement." *Acevedo v. BrightView Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (internal citations omitted); *see also, Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) ("Unlike a traditional class action under Rule 23,

potential class members in an FLSA collective action must affirmatively opt-in to be bound by the judgment…[T]heir failure to do so does not prevent them from bringing their own suit at a later date.").

Under the settlement, Defendants have agreed to make a payment of $69,000.00 to resolve this case (ECF No. 49-1 at p.4). The parties propose that the money will be allocated with $2,000 each to Mr. Tumpa and Ms. Kelley as an incentive award, and $25,133.08 for attorneys' fees and costs. After these deductions, the net settlement fund will be $39,866.92 (ECF No. 49-1 at Ex. A, p.2). This fund will be allocated to all Participating Settlement Class Members in an amount equal to the value of his or her unpaid wages divided by the total value of the unpaid wages of the Participating Settlement Class as a whole (ECF No. 49-1 at Ex. A, pp. 6-7). The checks issued to Participating Settlement Class Members will bear a legend describing the Release and informing them that by timely cashing their checks, they will be deemed to have opted-in to become a party plaintiff in the lawsuit (ECF No. 49-1 at Ex. A, pp. 6-7). The Court finds that the parties are not negotiating around the clear mandates of the FLSA and have provided a mechanism to satisfy the opt-in requirement for the class members. For the reasons stated herein, the Court is thus persuaded that the Agreement represents a fair and reasonable settlement of a bona fide FLSA dispute and that the proposed resolution will further the aim of implementing the FLSA in the workplace.

### B. Class Certification is Appropriate as the Settlement Class Satisfies the Requirements of Rule 23(a) and Rule 23(b).

At the certification stage, the Court must ensure that the proposed settlement classes "satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirements[.]" *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995). A class must satisfy the four

requirements of Rule 23(a) and fit within one of the three categories set forth in Rule 23(b).  *See* Fed. R. Civ. P. 23(a), (b).  In the Court's March 31, 2020 Order, the Court conditionally certified Plaintiffs' proposed class under Fed. R. Civ. P. 23(a) (ECF No. 50).  Upon review for the final approval, the Court finds that Plaintiffs' proposed class meets the standards set forth in Rule 23.

As to "numerosity," the class size of 139 members is sufficiently numerous under the first prong of Rule 23(a).  *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("[when] the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").  Under the second prong, Rule 23(a)(2) requires that the class members "share at least one question of fact or law in common with each other."  *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (internal citations omitted).  The focus is "whether the defendant's conduct was common as to all of the class members."  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015).  In this case, all members of the class share the common question of law as to the legality of Defendants' rounding policy, and this policy was enforced against all of the class members.  As to the third prong of typicality, Plaintiffs' legal claims are the same as those of the Settlement Class members relating to the rounding policy.  Fed. R. Civ. P. 23(a)(3).

Lastly, the adequacy prong has two components designed to ensure that absentees' interests are fully pursued.  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 601 (3d Cir. 2009); Fed. R. Civ. P. 23(a)(4).  These two components are: 1) the qualifications of the counsel to represent the class, and 2) whether conflicts of interest exist between named parties and the class they seek to represent.  *Id.*  In this case, Plaintiffs and their counsel have shown that they will fairly and adequately protect the interests of the classes.  Plaintiffs' counsel is fully qualified and has devoted a significant amount of time and effort to investigating the claims at issue and in negotiating the proposed settlement (ECF No. 45-1).  Both Plaintiffs' counsel and Plaintiffs have

11

vigorously represented the interests of the Settlement Class.  Further, based on the facts of the case, there are no conflicts between Plaintiffs and the Settlement Class.  The named Plaintiffs and the Settlement Class were uniformly subject to Defendants' rounding policy that is at issue in this suit.  Further, the incentive reward for the named Plaintiffs is reasonable.  As stated by Plaintiffs, the named Plaintiffs publicly sued their employer to remedy a wage violation on behalf of similarly situated employees (ECF No. 45-1).  The awards of $2,000 each represent just over 5% of the total Settlement Fund (ECF No. 45-1).  See *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2012) ("modest incentive award [of $2,000] for McGee is reasonable" out of $45,000 settlement); *In re Residential Doors Antitrust Litig.*, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000.00 incentive award); *In re Linerboard Antitrust Litig.*, No. 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) (approving $25,000.00 incentive award). Accordingly, the Court finds that the adequacy requirements are met as to the Settlement Class.

In addition to Rule 23(a) requirements, a purported class action must also satisfy a subsection of Rule 23(b).  Under Rule 23(b)(3), the Court permits class actions when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Predominance "is normally satisfied when plaintiffs have alleged a common course of conduct on the part of the defendant." *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 314-315 (3d Cir. 1999).  In this case, Plaintiffs have alleged a common course of conduct by the Defendants against Plaintiffs, e.g. their enforcement of the rounding policy. Under the facts of the case, it is unlikely that there would be significant differences between individual claimants' cases, particularly as the liability issues in this case turn solely on the conduct of Defendants, not

the conduct of individual class members.  As to the "superiority" requirement, the district court must consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (internal citations omitted).  The Court finds that this requirement has been satisfied.  Individually, each member of the class would have a small claim in relation to the cost of prosecuting this suit.  Additionally, as previously stated, notices were successfully delivered to all but three members of the Settlement Class and of those who received notice, only three chose to opt-out.  A class action is the superior method to protect Plaintiffs' asserted rights in this suit.

Along with the "predominance" and "superiority" requirements found in the text of this rule, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (internal citations omitted).  Plaintiffs' ability to identify the members of the Settlement Class and to deliver notices to all but three of them demonstrates that the class is ascertainable. Based on the foregoing, the Court finds that the requirements of Rule 23(b)(3) are satisfied.  As the Settlement Class satisfies both Rule 23(a) and Rule 23(b), the Court finds that certification is appropriate for purposes of settling this case on a class-wide basis.

### C. Final Approval is Warranted Under the *Girsh* factors and Fed. R. Civ. P. 23(e).

As to Plaintiffs' class action claims, Rule 23 requires that, before giving approval, the Court must determine that the parties' proposed settlement agreement is "fair, reasonable, and adequate" to protect the interests of class members.  Fed. R. Civ. P. 23(e)(2).  This determination is made after a "formal fairness hearing where class members may object to the settlement." *In re*

*NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (internal citations omitted). The factors governing final approval of a class action settlement are set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), where the Third Circuit set forth specific factors to guide the courts' determination of whether a settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risk of maintaining the class action through trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
>
> (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Id.*

Courts in the Third Circuit must apply the nine "*Girsh* factors" when evaluating class settlement agreements. *Halley v. Honeywell International, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017). Separately, in *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1999), the Third Circuit noted that, where relevant, "it may be useful to expand the traditional *Girsh* factors" to consider matters such as (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions; (2) the development of scientific knowledge; (3) the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability

14

and individual damages; (4) the existence and probable outcome of claims by other classes and subclasses; (5) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (6) whether class or subclass members are accorded the right to opt out of the settlement; (7) whether any provisions for attorneys' fees are reasonable; and (8) whether the procedure for processing individual claims under the settlement is fair and reasonable. *Id.* at 323. Unlike the *Girsh* factors, which the Court must always make specific findings regarding, the *Prudential* factors are merely "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

As a preliminary issue, the Third Circuit applies "an initial presumption of fairness . . . where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) (internal citations omitted). As previously stated, this case was mediated for a full day with an experienced neutral, there was sufficient discovery prior to the mediation to identify the class members and their damages, counsel has demonstrated their experience in this litigation, and no class members objected to the settlement, with only three members choosing to opt-out. As these elements are satisfied, the Court will apply the initial presumption of fairness, and for the below reasons, the factors enumerated in *Girsh* and Rule 23(e)(2) favor final approval of the settlement.

1. **Complexity, Expense, and Duration of the Litigation Absent a Settlement (*Girsh* Factor #1 and Rule 23(e)(2)(C)(i))**

The greater the apparent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the court will find a proposed settlement to be fair to employees and the public. *See In re Prudential Ins. Co.*, 148 F.3d at 318. FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts in this circuit. *See Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 743 (1981); *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, *5 (E.D. Pa. June 4, 2012). Additionally, Rule 23(e)(2)(C)(i) specifically requires the Court to consider the costs, risks, and delay of trial and appeal in its determination of whether the settlement is fair, reasonable and adequate.

As to the complexity of the case, Plaintiff states that the case would require a careful analysis of pay records to determine whether the Defendants' policies were illegal (ECF No. 55 at pp. 13-14). Additionally, there would still need to be extensive discovery relating to these claims and motions practice for class certification, dispositive motions, trial and a potential appeal (ECF No. 55 at pp. 13-14). The early settlement of this case saves the parties time and expense and conserves judicial resources. The Court finds that the first *Girsh* factor favors final approval of the Agreement.

### 2. Reaction of the Class to the Settlement (*Girsh* Factor #2)

The second *Girsh* factor asks whether any members of the certified class has objected or otherwise reacted to the proposed settlement. No objections have been filed and only three of the total 139 class members opted out, which is slightly over 2% of the Settlement Class (ECF No. 55 at 14). The overall reaction of the class members establishes that the second *Girsh* factor favors settlement approval.

### 3. Stage of the Proceedings and the Amount of Discovery (*Girsh* Factor #3)

The third *Girsh* factor requires the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2010) (quoting *In re Cendant Corp. Litigation*, 264 F.3d 201, 235 (3d Cir. 2001)).  In this case, the parties have shown that, at the time of the mediation, they had all the information necessary to calculate the full measure of damages Plaintiffs would likely recover if they were to succeed on their claims (ECF No. 55 at p. 15).  Though there was limited discovery in this case, the discovery that did occur was pivotal to providing the parties with an appreciation of the merits of the case.  The mediation also gave the parties the opportunity to discuss the strengths and weaknesses of the case (ECF No. 55 at p. 15).  Accordingly, the Court finds that the third *Girsh* factor favors approval.

### 4.   Risks of Establishing Liability and Damages (*Girsh* Factors #4 and #5 and Rule 23(e)(2)(C)(i))

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537 (internal citations omitted).  These factors "attempt to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 239.   Consideration of these factors overlaps with the Court's consideration of the costs, risks, and delay of trial and appeal pursuant to Rule 23(e)(2)(C)(i).

In this case, Plaintiffs would still need to prove each element of their FLSA, MWA, WPCL, and unjust enrichment claims to recover any damages.  Further, they would need to prove their entitlement to such damages.  Plaintiffs indicate they feel confident that Defendants' policies were illegal, though Defendants denied liability.  However, Plaintiffs concede that the extent of the available damages, including, but not limited to their claims for liquidated damages under the FLSA and/or the WPCL, were not as certain given the heightened evidentiary burdens for showing

entitlement to such damages (ECF No. 55 at p.16).   Defendants have also asserted the statute of limitations would present a bar to certain time periods of damages asserted by Plaintiffs. Additionally, the Plaintiffs' damages calculation is without any setoff that Defendants could be entitled to if there were instances where the Plaintiffs actually gained some advantage from the rounding policy (ECF No. 55 at p. 18).

Pursuant to the method of allocation provided for in the Agreement, the settlement administrator determined that the 139 Settlement Class Members, in the aggregate, had "Total [wage] Losses" of just under $20,663.32 (ECF No, 51-1 at ¶6).   Notably, the settlement totals 193% of aggregate lost wages without a setoff, over a period from three years prior to the Complaint (ECF No. 55 at p. 18).   As the settlement almost doubles the aggregate lost wages, the settlement is a reasonable assessment of Plaintiffs' risk versus potential recovery and satisfies the fourth and fifth *Girsh* factors as well as Rule 23(e)(2)(C)(i).

### 5.  Risks of Maintaining the Class Action Status Through Trial (*Girsh* Factor #6)

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537.   Plaintiffs submit that, if the case were to proceed in litigation, Defendants would undoubtedly oppose class and collective action certification (ECF No. 55 at p. 21).   The settlement, therefore, avoids these risks (ECF No. 55 at p. 21).

Here, the Court has found class certification appropriate.   However, regardless of the likelihood that certification would be granted at trial, as the final certification had not yet occurred, this sixth factor tips in favor of approving the settlement.

### 6.  Defendant's Ability to Withstand a Greater Judgment (*Girsh* Factor #7)

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin*, 391 F.3d at 537-38. Plaintiffs state they have no reason to believe that Defendants could not withstand a greater judgment (ECF No. 55 at p. 21). Further, there is no indication in the record that the parties settled for a below value amount because of concerns over Defendants' ability to pay and or any concern that the settlement was unduly small in light of the alleged conduct and Defendants' ability to pay more. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment."); *In re Warfarin*, 391 F.3d at 538 ("The District Court found that this factor neither favored nor disfavored settlement because of a lack of evidence in the record about DuPont's ability to pay or whether such a consideration factored into the settlement negotiations…[W]e see no error here.").

In this case, Defendants' ability to pay does not appear to have been a factor in the parties' negotiations, and the Court does not have any concern that the settlement here is inadequate in light of the alleged misconduct, Plaintiffs' maximum recovery, and potential legal challenges to that recovery. Accordingly, the seventh *Girsh* factor also favors approval of the settlement.

### 7. Reasonableness of the Settlement (*Girsh* Factors #8 and #9)

The eight and ninth *Girsh* factors involve the reasonableness of the settlement in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial. *In re NFL Players*, 821 F.3d at 440 (internal citations omitted). As previously stated, the settlement totals 193% of aggregate lost wages, without any setoff, over a period from three years prior to the complaint. Plaintiffs represent that the settlement provides monetary benefits to the individual class members that are essentially the full measure of damages that they could hope

to recover if Plaintiffs were to succeed on their FLSA claims, prove that Defendants' violation was "willful," defeat any "good faith" defense to liquidated damages, and obtain full collective action participation from the filing of their complaint (ECF No. 55 at p. 19). Based on these reasons, the Court agrees that the eighth and ninth *Girsh* factors favor approval of the settlement.

As all of *Girsh* factors favor approval, the Court concludes that the settlement is "fair, reasonable, and adequate" to protect the interests of all class members. Accordingly, the Court will grant Plaintiffs' motion to approve the settlement (ECF No. 54).

### D. The Attorneys' Fee Award in the Agreement is Reasonable.

Federal Rule of Civil Procedure 23(h) provides [that] in a certified class action, the court may award reasonable attorneys' fees that are authorized by law or by the parties' agreement. *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017). However, a "thorough judicial review of fee applications is required in all class action settlements." *In re Prudential*, 148 F.3d at 333 (internal citations omitted). "The Court must also separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013); *see In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("In FLSA cases, judicial approval of attorneys' fees is necessary to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.") (internal citations omitted).

Pursuant to the Agreement, Plaintiffs seek $24,121.86 in attorneys' fees and $1,011.22 in expenses, for a total award of $25,133.08—or just over 36% of the $69,000.00 monetary recovery

provided by the Settlement (ECF No. 52).   As discussed below, the Court finds this award is reasonable.

"Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus*, 155 F. Supp. 3d at 533.   In determining what constitutes a reasonable percentage fee award, a district court must consider the ten factors that the Third Circuit identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *In re Prudential*, 148 F.3d 283.   *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).   Those factors are:

1) the size of the fund created and the number of beneficiaries;

2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel;

3) the skill and efficiency of the attorneys involved;

4) the complexity and duration of the litigation;

5) the risk of nonpayment;

6) the time devoted to the case by plaintiffs' counsel;

7) the awards in similar cases;

8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and

10) any innovative terms of settlement.

*Id.*

Many of these factors are similar to the *Girsh* factors discussed above.   *See In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006).   These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'"   *Id.* at 166.   The Third

Circuit has explained that in a percentage-of-the-recovery analysis, "it is 'sensible' for the district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 305–306 (3d Cir. 2005) (citing *In re Prudential*, 148 F.3d at 333). That said, the cross-check "is not mandatory." *See Moore v. GMAC Mortgage*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014). Moreover, when used in this fashion, "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *In re Rite Aid*, 396 F.3d at 306.

The Court has already fully considered several of the *Gunter* and *Prudential* factors as part of its *Girsh* analysis above, and, as those factors favor approving the settlement, they similarly favor approving the requested attorneys' fees. Further, as set forth below, the remaining factors also suggest that the requested fee award is reasonable.

### 1. Size of the Fund Created and Number of Beneficiaries

The first *Gunter* factor requires the Court to examine the size of the fund created and the number of beneficiaries in the class. In this case, the parties agreed to settle this case for a total payment of $69,000.00. Following deduction of the requested incentive awards and attorneys' fees and costs, the "Net Settlement Fund" totals $39,866.92. This amount will be allocated to the Settlement Class Members who do not opt-out of the class (the "Participating Settlement Class Members"). The settlement administrator indicated that the total 139 Settlement Class Members had a total wage loss of just under $20,663.32 (ECF No. 51-1 at ¶7). The parties represent that, for those who remain in the settlement, they will receive approximately 193% of their individual "lost" wages which will also be without the deduction of any "setting off" wages paid for time not worked (ECF No. 51-1 at ¶7). Additionally, the shares of those three class members who have opted-out of the settlement will be allocated among those who remain in the settlement, further increasing the awards for the Participating Settlement Class Members (ECF No. 51-1 at ¶8).

**2.  Absence or Presence of Substantial Objections by Members of the Class**

As previously stated, there have been no objections filed to any aspect of the Agreement, including to the attorneys' fees award (ECF No. 51-1 at ¶9).  Further, no third-party objected to or otherwise sought to intervene in the settlement during the final fairness hearing on August 20, 2020 (ECF Nos. 59, 60).  The absence of any objections favors the approval of fees without reduction.  *Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. July 18, 2016).

**3.  Skill and Efficiency of Attorneys Involved**

As previously discussed, Plaintiffs' counsel are experienced class and collective action litigators who have served as lead counsel in many class action and wage loss lawsuits (ECF No. 52 at p. 10).  Additionally, Plaintiffs' Counsel negotiated a very favorable settlement early in the litigation against experienced and qualified opponents (ECF No. 52 at p. 10).  The third factor weighs in favor of approval.

**4.  Complexity and Duration of Litigation**

This factor overlaps with the first *Girsh* factor.  As previously discussed, Plaintiffs indicate that trial of this case would require an in-depth analysis of the relevant pay records as well as additional extensive discovery (ECF No. 55 at pp. 13-14).  By negotiating an early settlement, Plaintiffs' counsel achieved a positive result for class members that avoided protracted litigation. This factor favors approval of the requested fee award.

**5.  Risk of Nonpayment**

The fifth *Gunter* factor considers how much risk Plaintiffs' counsel assumed by prosecuting their case with no guarantee of recovery.  *See, e.g., Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012).  Plaintiffs state that there was a risk of nonpayment in this case, both for the Plaintiffs and their counsel (ECF No. 52 at p.

11).  Plaintiffs' counsel took the matter on a contingency basis and would have recovered nothing if the Court ultimately found in favor of Defendants on the merits of the case (ECF No. 51-1 at ¶ 11).  The risk of nonpayment under this fifth factor favors approval of the requested fee award.

### 6.  Amount of Time Devoted to Case by Counsel

Plaintiffs state that Plaintiffs' counsel devoted 190.80 professional hours to this matter as of June 30, 2020 (ECF No. 51-1 at ¶12).  *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, *13 (E.D. Pa. April 15, 2015) (concluding that "the time devoted to this case was significant" where counsel devoted 221.45 hours to case).  The amount of time is appropriate for the comprehensive litigation of this matter, and this *Gunter* factor favors approval of the requested fee.

### 7.  Awards in Similar Cases

The requested attorneys' fees, which amounts to just slightly under 35% of the Gross Settlement Fund of $69,000.00, is reasonable when compared to similar percentages in similar cases.  *See Kraus*, 155 F.Supp.3d at 534 ("courts have approved attorneys' fees in FLSA settlements from roughly 20-45% of the settlement fund"); *Brumley*, 2012 WL 1019337, *12 ("The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund…the attorneys' fees request of one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market.").

Additionally, this percentage is reasonable when cross-checked against the "lode-star" method.  The lodestar analysis aims to "ensure that the proposed fee award does not result in counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a 'windfall' to lead counsel." *In re Cendant*, 264 F.3d at 285.  Plaintiffs' counsel represents that they devoted 190.80 hours to case, with a lodestar value of $82,629.98 at their usual hourly rates (ECF No. 51-1 at ¶ 12, ECF No. 51-2).  Here Plaintiffs' lodestar is much higher than the amount of fees Plaintiffs would obtain under the percentage-of-the-recovery method, and

therefore, there is no danger that a 35% recovery will result in a "windfall." The requested fee represents just 29% of the lodestar, indicating that the requested fee is reasonable.

**8. Value of Benefits Attributable to Class Counsel Relative to Other Groups**

This factor is typically relevant in cases where a government agency or other third-party investigated the issues in the case to such an extent that a smaller fee award would be appropriate for Plaintiffs' counsel. In this case, no such third-party or government actor played a part in the investigation or litigation of this case. As a result, this factor favors approval of counsel's fees without any reduction to account for work done by government or third-party actors.

**9. Percentage Fee if Subject to Private Fee Arrangement**

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (internal citations omitted); *see Craig v. Rite Aid Corp.*, No. 08-2317, 2013 WL 84928, at *12 (M.D. Pa. Jan. 7, 2013) ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates.'"). A percentage fee of 35% falls in the middle of that range, so this factor also favors approval of the fee award.

**10. Innovative Terms of Settlement**

The Court has reviewed the parties' Agreement and has identified no unusual or "innovative" terms requiring further analysis. Thus, the final factor favors approval. Additionally, Plaintiffs' counsel incurred $1,011.02 in litigation costs and expenses in prosecuting this case (ECF No. 51-1 at ¶ 13, ECF No. 51-3). These costs were reasonable in light of the requirements of the case and should be reimbursed.

The Court further finds that a lodestar cross-check is not required in this case as Plaintiffs' recovery under a lodestar method would be much higher than under the percentage-of-recovery method, thus eliminating the possibility of a "windfall." *See Moore v. GMAC Mortg.*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) ("The lodestar cross-check is 'suggested,' but not mandatory."); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 (D.N.J. 2001) ("*Cendant* stated that the use of the lodestar cross check is not mandatory in determining the reasonableness of a fee award."). Because all the *Gunter* and *Prudential* factors weigh in favor of approval, the Court will grant Plaintiffs' motion (ECF No. 51) and award counsel's requested fees and costs.

## III.    Conclusion

After careful consideration, and following the final fairness hearing on August 20, 2020, during which no individual objected or otherwise sought to intervene, the Court will grant Plaintiffs' unopposed motions for final approval of the collective and class action settlement agreement (ECF No. 54) and for approval of Plaintiffs' counsel's requested award of attorneys' fees and costs (ECF No. 51).

An appropriate order will follow.

Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record